*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DANA EASTON,

       Plaintiff-Appellant,

v

MEIJER, INC.,

       Defendant-Appellee.

UNPUBLISHED
November 21, 2023

No. 363597
Oakland Circuit Court
LC No. 2021-188931-NO

Before: RIORDAN, P.J., and CAVANAGH and GARRETT, JJ.

PER CURIAM.

Dana Easton slipped and fell on the contents of a spilled peach cup while grocery shopping at Meijer. The trial court dismissed Easton's case after Meijer moved for summary disposition, concluding that Easton had not shown that Meijer had constructive notice of the hazard. Because Easton failed to establish that the spill existed for a sufficient length of time such that any Meijer employee should have known about it, we affirm.

## I. BACKGROUND

On May 2, 2021, Easton went grocery shopping with her mother at a Meijer in Rochester Hills. The store opened at 6:00 or 7:00 a.m., and Easton and her mother arrived around 9:00 a.m. About 20 minutes later, as she walked down a grocery aisle, Easton slipped and fell on the juices of a spilled peach cup. While on the floor, Easton smelled and saw peach juice, and the juice seeped onto her pants and her back. Located on the ground were also loose peaches, the peach cup that spilled, and the broken container of peach cups. Easton stated that she looked around after falling and thought that the edges of the peach juice had started to dry.

Easton sued Meijer for premises liability, alleging that it breached its duty to protect her from the unreasonable risk of harm created by the spilled peaches. Meijer denied liability, and following discovery, moved for summary disposition under MCR 2.116(C)(10). Meijer argued that Easton failed to create a genuine issue of material fact as to whether Meijer had notice of the alleged hazard. Even if it had notice, Meijer claimed, the hazard was open and obvious, so Meijer owed Easton no duty to remedy the spill. In response, Easton argued that the peaches had been

-1-

spilled for a sufficient length of time to conclude that Meijer had constructive notice. Easton also contended that the peach juice was not open and obvious because it was invisible.

The trial court granted Meijer's motion for summary disposition after holding that Easton submitted insufficient evidence of constructive notice. Easton's claim that the liquid appeared to be drying around the edges, the court found, was "speculative and lacking in evidentiary support." The court also concluded that Meijer employees likely conducted their daily inspections shortly after 7:00 or 8:00 a.m. that morning and saw that the aisle was clear of any hazard. Although unnecessary to decide, the court also held that the hazard was open and obvious, which under then-existing precedent provided another basis for dismissal of Easton's case.

Easton unsuccessfully moved for reconsideration and now appeals the order granting summary disposition for Meijer.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Wasik v Auto Club Ins Assoc*, 341 Mich App 691, 694; 992 NW2d 332 (2022). That means we analyze the legal issue independently, giving "respectful consideration, but no deference" to the trial court's conclusion. *Id*. at 695. Meijer moved for summary disposition under MCR 2.116(C)(10), testing the factual sufficiency of Easton's claim. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). "A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) when the affidavits or other documentary evidence, viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and the moving party is therefore entitled to judgment as a matter of law." *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5; 890 NW2d 344 (2016). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270-271; 826 NW2d 519 (2012) (cleaned up). "Circumstantial evidence can be sufficient to establish a genuine issue of material fact, but mere conjecture or speculation is insufficient." *McNeill-Marks v Midmichigan Med Ctr-Gratiot*, 316 Mich App 1, 16; 891 NW2d 528 (2016).

## III. CONSTRUCTIVE NOTICE

Easton argues that she presented sufficient evidence to create a genuine issue of material fact on the issue of Meijer's constructive notice.

"All negligence actions, including those based on premises liability, require a plaintiff to prove four essential elements: duty, breach, causation, and harm." *Kandil-Elsayed v F & E Oil Inc*, ___ Mich ___, ___; ___ NW2d ___ (2023) (Docket No. 162907); slip op at 8. A premises owner owes the greatest duty of care to an invitee. *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 597; 614 NW2d 88 (2000). There is no dispute that Easton, as a customer at a business, was an invitee of Meijer's when she fell. See *Jeffrey-Moise v Williamsburg Towne Houses Coop, Inc*, 336 Mich App 616, 627; 971 NW2d 716 (2021). A premises owner possesses a "duty to exercise reasonable care to protect invitees from an unreasonable risk of harm caused by a dangerous condition of the land." *Kandil-Elsayed*, ___ Mich at ___; slip op at 43 (cleaned up). This duty of care is breached when the premises owner "knows or should know of a dangerous

-2-

condition on the premises of which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect." *Lowrey*, 500 Mich at 5 (cleaned up). Thus, to establish that Meijer breached its duty, Easton "must demonstrate that [Meijer] had actual or constructive notice of the dangerous condition at issue." *Jeffrey-Moise*, 336 Mich App at 627 (cleaned up).

Easton offers no evidence that any Meijer employee actually knew about the spilled peach cup before her fall. We therefore focus on whether Meijer had constructive notice of the hazard. Constructive notice requires evidence "that the hazard was of such a character, or had existed for a sufficient time, that a reasonable premises possessor would have discovered it." *Lowrey*, 500 Mich at 11-12. That is, the constructive notice doctrine asks whether the defendant "should have known" about the dangerous condition "because of its character or the duration of its presence." *Id.* at 11. "Generally, the question of whether a defect has existed a sufficient length of time and under circumstances that the defendant is deemed to have notice is a question of fact, and not a question of law." *Banks v Exxon Mobil Corp*, 477 Mich 983, 984 (2007). But the defendant need not offer evidence of a "routine or reasonable inspection" to prove that it lacked constructive notice of a hazard on its property. *Lowrey*, 500 Mich at 10. Rather, a defendant can "establish its entitlement to summary disposition by demonstrating that [the] plaintiff failed to present sufficient evidence of notice." *Id.* Unless the plaintiff presents evidence—not speculation—to establish that the premises owner possessed constructive notice of a dangerous condition, summary disposition is proper. See *id.*

Easton's claim of constructive notice rests on legally irrelevant facts and speculation. First, Easton emphasizes that Meijer employees are required to inspect the grocery aisles, but the employees who were deposed in this case could not recall if the aisle where Easton fell had been checked that morning. This argument conflicts with *Lowrey* because it presumes that evidence that a reasonable inspection was not performed creates a question of fact on constructive notice. Our Supreme Court declared that it had "never required a defendant to present evidence of a routine or reasonable inspection under the instant circumstances to prove a premises owner's lack of constructive notice of a dangerous condition on its property." *Id.* Thus, Meijer had no duty to establish that it performed a reasonable inspection of the grocery aisles on the morning of Easton's fall.[1]

Easton's only other argument for proving constructive notice is that, after falling to the ground, she saw peach juice, which "looked like around the edges it already had started to dry." She followed this statement by saying that the peach juice "looked like it had been there a while." Easton also testified that there was peach juice "all around [her]," that peach juice soaked into her pants, and that her back was wet from peach juice. Easton's statement about drying "edges," considered alongside her unequivocal testimony about the peach juice on her clothes and body,

---

[1] We disagree with the trial court's statement that the evidence showed that Meijer employees likely inspected the aisle that morning. Viewed in the light most favorable to Easton, a reasonable factfinder could conclude that the aisle where Easton fell was not inspected that morning. But that does not affect our analysis because, as we just explained, Meijer had no duty to present evidence of an inspection to prove that it lacked constructive notice. See *Lowrey*, 500 Mich at 10.

does not lead to a reasonable inference about the timing of the hazard's existence. At best, a factfinder could only speculate from this testimony that the peach juice was present long enough for a reasonable storeowner to have noticed and remedied it. A factfinder would be left to guess whether the peach juice had been present for a lengthy period of time on the aisle floor—and thus should have been discovered by Meijer—or whether the hazard had formed mere minutes before Easton's fall. Such speculation cannot create a genuine issue of material fact. *McNeill-Marks*, 316 Mich App at 16. In sum, the "missing link" in this case was any evidence on when the dangerous condition arose in the aisle. *Lowrey*, 500 Mich at 12. Therefore, reasonable minds could not conclude that the spill existed for a sufficient length of time such that Meijer employees should have discovered it.[2]

Easton briefly asserts that the trial court made impermissible findings of fact when it concluded that her testimony about drying edges was speculative. Easton is correct that a trial court may not make findings of fact when deciding a motion for summary disposition; "if the evidence before it is conflicting, summary disposition is improper." *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018) (cleaned up). But questions of fact must rest on evidence, not speculation or conjecture. See *McNeill-Marks*, 316 Mich App at 16. When the plaintiff has presented only speculation in support of a material factual dispute, as is the case here, the trial court does not err by granting summary disposition for the defendant. See *id*.

Easton also analogizes her case to two decisions where Michigan courts found sufficient evidence of constructive notice: *Ritter v Meijer, Inc*, 128 Mich App 783; 341 NW2d 220 (1983), and *Clark v Kmart Corp*, 465 Mich 416; 634 NW2d 347 (2001). Incredibly enough, both cases involved customers who slipped and fell on loose grapes. *Ritter*, 128 Mich App at 785; *Clark*, 465 Mich at 417. First, in *Ritter*, 128 Mich App at 786, there was evidence that the grape that the plaintiff slipped on had previously been stepped on by someone else. This Court concluded that "a stomped upon grape is sufficient evidence to prove constructive notice of a slippery condition." *Id*. at 787. Similarly, *Clark* involved a plaintiff who slipped on several grapes that were scattered on the floor of a closed check-out lane. *Clark*, 465 Mich at 417. In reversing a jury verdict in the plaintiff's favor, this Court declined to follow *Ritter*, finding its reasoning "too logically attenuated" to support an inference of constructive notice. *Id*. at 418. Our Supreme Court again reversed. In doing so, the Court found it "unnecessary to determine whether *Ritter* was correctly decided" because there was evidence "that the grapes had been on the floor for a substantial period of time." *Id*. at 419-420. The Court focused on evidence that the check-out lane had been closed for an hour before the plaintiff arrived. *Id*. at 420.

> Given that evidence, a jury could reasonably infer that the loose grapes were, more likely than not, dropped when a customer brought grapes to the check-out lane to buy them while it was still open. From this, the jury could infer that an employee

---

[2] We do not adopt Meijer's argument that Easton's testimony about drying edges was "blatantly contradicted" by the record, such that no reasonable factfinder could believe her. See *Scott v Harris*, 550 US 372, 380; 127 S Ct 1769; 167 L Ed 2d 686 (2007). The photographs of the fall site contained in the record, which drive this argument, are not clear and definitive enough for us to say that Easton's testimony is blatantly contradicted.

of defendant should have noticed the grapes at some point before or during the closing of the lane and either cleaned them up, or asked another employee to do so. Further, the fact that the check-out lane had been closed for about an hour before plaintiff fell establishes a sufficient length of time that the jury could infer that defendant should have discovered and rectified the condition.

The availability of the inference that the grapes had been on the floor for at least an hour distinguishes this case from those in which defendants have been held entitled to directed verdicts because of the lack of evidence about when the dangerous condition arose. [*Id*. at 420-421.]

Neither *Ritter* nor *Clark* are so factually similar to this case as to compel reversal. Assuming *Ritter* retains some precedential value,[3] there was no evidence in this case that peaches had been stepped on or that any other customer had encountered the hazard before Easton's fall. And unlike in *Clark*, Easton presented no evidence supporting a reasonable inference as to when the hazardous condition arose. Our Supreme Court in *Clark* expressly distinguished the facts of that case from others that lacked "evidence about when the dangerous condition arose." *Clark*, 465 Mich at 421. This case falls in the latter category—a jury could only speculate when the spill from the peach cup occurred. Because Easton failed to present sufficient evidence to create a jury-submissible question on constructive notice, the trial court did not err by granting Meijer's motion for summary disposition.[4]

We affirm.

/s/ Michael J. Riordan
/s/ Mark J. Cavanagh
/s/ Kristina Robinson Garrett

---

[3] *Ritter* was decided before November 1, 1990. "Although published decisions of this Court issued prior to November 1, 1990, are not strictly binding on this Court, all published decisions of this Court are precedential under the rule of stare decisis and generally should be followed." *Davis v Secretary of State*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 362841); slip op at 9 n 10. *Ritter*'s precedential vitality is less clear, however, because this Court has rejected *Ritter*'s holding. See *Clark v Kmart Corp (On Remand)*, 249 Mich App 141, 149; 640 NW2d 892 (2002) (noting that our Supreme Court, in remanding the case, "left undisturbed the portion of our opinion rejecting *Ritter*").

[4] Because our resolution of constructive notice is dispositive, it is unnecessary to address the parties' arguments about the open-and-obvious hazard doctrine.